## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

JAMES D STRONG, JR., M.D.,

                Plaintiff,

v.

UNUMPROVIDENT CORPORATION, a
Delaware corporation, UNUM LIFE
INSURANCE COMPANY OF AMERICA,
a Maine corporation, and PROVIDENT
LIFE AND ACCIDENT INSURANCE
COMPANY, a Tennessee corporation,

                Defendant.

Case No. CIV 03-528-S-EJL

**ORDER**

Plaintiff, James D. Strong, Jr., M.D., brings this action against Defendants, UnumProvident Corporation ("UnumProvident"), Unum Life Insurance Company of American ("Unum"), and Provident Life and Accident Insurance Company ("Provident"), alleging breach of contract and bad faith. Defendants have moved for summary judgment on all of Dr. Strong's claims. Additionally, UnumProvident and Unum seek their dismissal from this lawsuit. Dr. Strong, in turn, requests by way of a motion for partial summary judgment that the Court rule in his favor on certain legal issues. Dr. Strong also asks for leave to amend his complaint to allege a claim for punitive damages. The motions are now ripe. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the brief and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by

oral argument, this matter shall be decided on the record before this court without a hearing.

## I. BACKGROUND

Dr. Strong is a medical doctor who at one time maintained a full gynecological practice in Dallas, Texas.  Effective May 1, 1980, Dr. Strong became insured under a policy of disability insurance issued by Provident.  The policy originated from Provident's Dallas, Texas branch office, and provided for monthly payments up until Dr. Strong's 65th birthday if he became totally disabled due to sickness or for monthly payments for life if total disability was the result of injuries.  The policy defines "injuries" as "accidental bodily injuries occurring while this policy is in force," and "sickness" as "sickness or disease which is first manifested while this policy is in force."  Effective April 1, 1987, Dr. Strong obtained an additional policy of disability insurance from Provident.  This application for insurance was completed in Texas and the policy also issued from Provident's Dallas, Texas branch office.  Similar to the first policy, the additional policy provides benefits for life for total disability caused by injuries or to age 65 for total disability caused by sickness.  Dr. Strong suffers from a condition known as strabismus, or a misalignment of the eyes.  On May 24, 1996, Dr. Strong underwent the first of three surgical procedures performed by Dr. David R. Strager and Dr. Marshall Parks.  The goal of these procedures was to correct the misalignment of Dr. Strong's eyes and to improve his stereoscopic vision.

On July 8, 1996, Dr. Strong submitted his initial application for disability benefits.  Shortly thereafter, Defendants began to make benefit payments to Dr. Strong, apparently under the sickness provision of the insurance policies. The record indicates

ORDER - 2

that on September 18, 1998, Dr. Strong left a phone message with Provident stating that he wanted to change his claim from a sickness to an accidental claim and that he would be submitting documentation for review.

On July 19, 2000, Dr. Strong left a phone message with UnumProvident stating his eyes were "accidentally" worse. On September 19, 2000, a representative of UnumProvident sent a letter to Dr. Strong responding to his July 19, 2000 request to have his disability changed from a sickness to an accident.  This letter noted that Dr. Strong had been advised to submit documentation supporting his request to have his disability changed from sickness to accident, and that he had not done so and as a result, and after a complete evaluation of his file, his disability, that of strabismus, was "considered to be that of a sickness."

On September 27, 2000, Dr. Strong appealed in writing the decision outlined in the September 19, 2000 letter.  Dr. Strong maintained his disability was definitely due to injury or accident secondary to his three surgical procedures.  On October 13, 2000, a lead appeals specialist of Unum acknowledged receipt of Dr. Strong's September 27, 2000 letter and indicated his appeal was being reviewed.  During this time period, Dr. Strong also submitted documentation regarding his claim request.

On January 24, 2001, Unum sent a letter to Dr. Strong stating that after a complete evaluation of his file it concluded that Dr. Strong's disabling condition had been appropriately classified as a sickness as opposed to an accident.  Unum stated that the payment of Dr. Strong's claim as a sickness was appropriate and that it was upholding the prior claims decisions.

ORDER - 3

On July 12, 2002, Dr. Strong, through counsel, requested that Unum reconsider its position.  In response, a Provident medical reviewer reexamined the entire medical and claims file, and concluded that Dr. Strong's disabling condition was the result of a sickness. Based upon this review, UnumProvident advised Dr. Strong on September 23, 2002 that it was upholding its prior determinations that his disabling condition was caused by a sickness as opposed to an accident or injury.

On January 21, 2003, this lawsuit was filed by Dr. Strong claiming that the Defendants had breached the terms of the insurance contracts and that Dr. Strong and Defendants had a relationship or insured/insurer/adjuster and that this relationship imposed a duty to act in good faith and that denial of long-term disability payments to Dr. Strong constituted bad faith on behalf of Defendants.  The parties subsequently filed the motions currently pending before the Court.

## II. STANDARDS OF REVIEW

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir.  2002).

In this diversity action, the Court must apply substantive state law as interpreted by the state's highest court.  Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 966 (9th Cir. 1993).  "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."  Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990).  In this regard, the federal court must follow an intermediate state

ORDER - 4

court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise.  <u>Richardson v. United States</u>, 841 F.2d 993, 996 (9th Cir. 1988).

Where, as here, there is a question as to which state's law is controlling the federal court  "must look to the forum state's choice of law rules to determine the controlling substantive law." <u>Patton v. Cox</u>, 276 F.3d 493, 495 (9th Cir. 2002). Because this case was filed in the District of Idaho, the Court will look to Idaho's conflict of law rules. <u>See</u> <u>id.</u>

### III.  ANALYSIS

**A.  Breach of Contract Claim**

**1.  Statute of Limitations Defense**

The Court must first determine if Defendants may properly raise a statute of limitations defense and, if so, which state's statute of limitations applies, Texas or Idaho. It matters because  Idaho law allows a statutory limitation on a contract claim of five years while Texas law allows a statutory limitation on a contract claim of only four years.  Therefore, whether Dr. Strong's claim has been properly filed within the statute of limitations may turn on which state's limitations period applies to Plaintiff's claim. Of course the applicable state's law also will determine when the injury accrued and govern the legal standards that define the cause of action.

Plaintiff initially argues that Defendants have waived any statute of limitations defense. By reference to Idaho law, Plaintiff contends that Defendants were required to cite in the Answer the particular state statute that supported their statute of limitations defense, and because they failed to do so, they have waived any such defense. Plaintiff

is correct in arguing that Idaho's statute of limitation is "substantive" in the sense that this federal court, exercising diversity jurisdiction, must afford it respect.   See Muldoon, 1 F.3d at 966. This does not mean, however, that this federal court is required to honor the state's method   for asserting a statute of limitations defense. On the contrary, the manner by which a defense is pled is strictly procedural in nature and therefore is a matter of federal law, not state law.[1] Accordingly, "[w]hether waiver occurred is a question of federal law under the Federal Rules of Civil Procedure." Taylor v. United States, 821 F.2d 1428, 1433 (9th Cir.1987).  And because the Federal Rules do not require the technical formality in pleading that Plaintiff seeks to impose on Defendants' statute of limitations defense, there has been no waiver.   See, e.g. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 216 F.3d 764, 788 (9th Cir. 2000); Taylor, 821 F.2d at 1433.

### 2. Conflicts of Law

The Idaho Supreme Court applies the most significant relationship test in conflict of law resolution and has opted in favor of applying the test set forth in the Restatement (Second) of Conflicts of Laws.   Barber v. State Farm Mutual Automobile Insurance Company, 931 P.2d 1195, 1199 (Idaho 1997). This test has been used by the Idaho Supreme Court on more than one occasion to specifically make the conflict of law choice with regard to a statute of limitations issue.[2] See, e.g., Dillon v. Dillon, 886 P.2d

---

[1]        Significantly, Plaintiff does not cite one case that disputes this concept.

[2]        Given Idaho's reliance on the most significant relationship test to resolve these matters, the parties reasonably argue the merits of this test in regards to the present statute of limitations dispute. However Idaho has a "borrowing statute" that also applies to this issue. "Traditionally, states applied their own statutes of limitations even if the

777, 777-78 (Idaho 1994) (applying in choice of law context the most significant relationship test to statute of limitations question). The goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that issue.   In doing so, the court first identifies various factual contacts between the transaction or parties and the interested states.   It then evaluates these contacts in light of certain broad policy concerns.   However, the relevant factual contacts and the importance of particular policy concerns vary depending upon the nature of the substantive issues implicated by the underlying dispute.   Seubert Excavators Inc., v. Anderson Logging Company, 889 P.2d 82, 85 (Idaho 1995).

With regard to an issue in contract, a set of factual contacts are considered in determining which state has the most significant relationship to the dispute: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.   Id.

In applying this analysis to the present case, the Court concludes as a matter of law that Texas has the most significant relationship to the breach of contract claim.   The

offending conduct happened elsewhere." Flowers v. Carville, 310 F.3d 1118, 1123 (9th Cir. 2002). To avoid forum shop "many states have passed 'borrowing statutes' that instruct their courts to apply foreign statutes of limitations in certain cases." Id. Idaho's borrowing statute, Idaho Code § 5-239, provides that when a cause of action has arisen in another state and is barred by that state's statute of limitation, that state's statute of limitations shall control, "except in favor of one who has been a citizen of this state and who has held the cause of action from the time it accrued." The exception clause has been interpreted as requiring "that the plaintiff be a citizen [of Idaho] at the time his claim accrued." Id. at 1124 (citing Miller v. Stauffer Chem. Co., 581 P.2d 345, 346-47 (Idaho 1978)). Analysis of the statute of limitations issues in this case under Idaho's borrowing statute would not result in a different outcome. See, e.g., Miller, 581 P.2d at 346-47; Attorney General of Canada v. Tysowski, 800 P.2d 133, 135 (Idaho App. 1990).

place of contracting, the place of negotiating the contract, the place of performance and location of the subject matter of the contract, and the Defendants' place of business are all in Texas.  Therefore, Texas law governs the effect of the statute of limitations as to the contract claim and controls when the injury accrued on the breach of contract claim.

### 3.  Statute of Limitations Analysis

Defendants move for summary judgment on Dr. Strong's contract claim on the basis that it is barred by the applicable statute of limitations.  Defendants bear the burden to prove their affirmative defense by conclusively establishing the applicability of the statute of limitations, including the date on which the limitations commenced.  Provident Life and Accident Insurance Company v. Knott, 128 S.W.3d 211, 220 (Tex. 2004).

Pursuant to Texas law, an action for a breach of contract is governed by a four year statute of limitations.  Tex. Ins. Code Ann. art. 21.21 §16(d) (Vernon 2005).  A breach of contract claim accrues when the contract at issue is breached.  Stine v. Stewart, 80 S.W. 3d 586, 592 (Tex. 2002).  Under Texas law it is clear that the injury accrues when the insurer is denied coverage.  Knott, 128 S.W.3d at 221.

The parties disagree on the date that coverage was denied.  Dr. Strong argues that Defendants did not provide him with an outright denial of his claims for injury disability benefits until the September 19, 2000 letter, or in the alternative, that the accrual date is a question of fact.  Defendants argue that the limitations began to run as of 1996 when Defendants determined that Dr. Strong's disability was due to sickness, not an accident or injury.  However there is no evidence that Dr. Strong was ever notified in 1996 as to this decision.

ORDER - 8

It is undisputed the disability payments began to be paid to Dr. Strong in 1996 after Dr. Strong filed his claim in July 1996.  While Defendants maintain Dr. Strong was notified the payments were being denied under the "injuries" provision, there is no record of this notification to the insured.  The fact that in 1998 Dr. Strong telephoned Provident and wanted to change his coverage to the accident provision is not evidence of an outright notification that his claim under the accidental bodily injury provision had been denied.  Without an insurance company letter or an admission by Dr. Strong that he was made aware that his claim under the injuries provision had been denied sometime prior to his 1998 message, the phone message is insufficient to establish notification for purposes of a statute of limitations defense.

It is also undisputed that Dr. Strong called the insurance company requesting a change from sickness coverage to injury coverage in the summer of 2000.  This telephone conversation was followed up with a letter dated September 19, 2000 from the insurance company indicating that Dr. Stong's request for coverage under the injuries provision was being denied.  While it seems unusual for a party to request a change in coverage if such person had not previously been advised coverage was denied, the record before the Court lacks competent evidence to show that the insured received written or oral notification of the denial of coverage under the injury provision before the September 19, 2000 letter.  The letter denying coverage would be the earliest date the breach of contract claim arose as that is the date Plaintiff was notified the coverage under the injury provision was formally denied.  Since the complaint was filed on January 21, 2003, the breach of contract claim is clearly within the four-year statute of limitations and the affirmative defense as to this claim is denied.

ORDER - 9

**4.  Genuine Issue of Material Fact Analysis**

Here summary judgment is precluded because of the contractual factual contentions as to whether Dr. Strong's condition is a "sickness" or an "injury."

Defendants claim that there is no genuine issue of material fact as to Dr. Strong's disability.  They claim that Dr. Strong's strabismus was a pre-existing condition and while the surgeries did not make his congenital condition any better they certainly did not make his eyesight worse and his deteriorating condition was not a result of an injury or accident.  In support of this argument, Defendants note the opinions of Dr. Strong's treating physicians Dr. Strager and Dr. Parks who reviewed Dr. Strong's medical records as well as examined him and concluded that his eyesight was no worse or better after the surgeries.  The doctors who treated Dr. Strong as well as Defendants' medical examiners believe that Dr. Strong's disability was caused by his congenital disease, not by an accident or injury.  Accordingly, the Defendants believe that Dr. Strong is not entitled to continued disability benefits after his 65th birthday pursuant to the terms of the insurance policies.  The Defendants claim that there has been no breach of contract.

Dr. Strong claims that his deteriorating eye sight, which has left him totally disabled under the definition of "total disability," was caused by the three surgeries that were performed by Dr. Strager and Dr. Parks.  Plaintiff's alleged "injury" is supported by Dr. Richard Olson's expert opinion.  Dr. Richard Olson states in his deposition that there is medical evidence to show that the 1996 surgeries caused Dr. Strong's disability and that this result was neither intended nor expected.  Dr. Richard Olson states that "based on my examination, I strongly feel that his double vision and depth perception problems, which required him to cease surgery and finally cease practice in his area of

medicine, was brought on, or at least significantly hastened by his strabismus surgery."[3]

Based on the contrary contentions of the parties' experts, the Court is precluded from granting summary judgment on the breach of contract claim and this claim will proceed to trial.

## B.  Bad Faith Claim

### 1.  Conflicts of Law

Plaintiff also asserts a tort claim against Defendants alleging bad faith. Idaho law appears to allows a statutory limitation on a bad faith tort claim of four years.  Idaho Code § 5-224 (Michie 2004). Texas law allows a statutory limitation on a bad faith tort claim of two years.  Tex. Ins. Code art. 21.21 § 16(d) (Vernon 2005).  Therefore, whether Dr. Strong's bad faith claim may be within the statute of limitations turns on which state's law governs the effect of that agreement.  As discussed earlier, Idaho applies the most significant relation test as set forth in the Restatement (Second) of Conflict of Laws § 145 in determining the applicable law.  In a tort case the following considerations must be taken into account: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any between the parties is centered.   Grover v. Dr. W.E. Isom, 53 P.3d 821, 823-24 (Idaho 2002).

_____

[3]        Plaintiff spends a considerable amount of time discussing an "unintended means test." On this point, the Court must agree with Defendants: that the relevant question in regards to the pending motions is whether there is record evidence that raises a genuine issue of material fact on the cause of Dr. Strong's condition. The quoted statement of Dr. Olson is such evidence.

ORDER - 11

Defendants ceased making benefit payments to Dr. Strong on this 65th birthday, in June of 2002.  Dr. Strong moved to Idaho late in 1998.  The place where the alleged injury occurred therefore would arguably be Idaho.  The place of the offending conduct - denying payments of benefits to Dr. Strong under the "injury" provision of the insurance contract -  occurred in Texas.  The domicile and residence of Dr. Strong from 1998 to present is Idaho.  While  none of the Defendants are incorporated in Texas, they do have places of business in Texas.  The place where the relationship between the parties was centered was in Texas.

In the present case there are various factual contacts with both states.  The alleged injury occurred in Idaho, but the place where the relationship between the parties is centered is in Texas.  Under Idaho law, once the tort factors are considered, they are evaluated in light of the following policy concerns: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issues, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) the ease in determination and application of the law to be applied.  Grover, 53 P.3d at 824.

These policy considerations as well as the tort factors support the application of Texas law.  Dr. Strong resided in Texas, he practiced medicine in Texas, he sought out and purchased an insurance policy in Texas, he paid his premiums and earned income that was to be insured in Texas, he also suffered total disability and applied for benefits under his insurance policy in Texas. Texas is the state in which the insurance policy

ORDER - 12

was purchased and issued.  In addition, the conduct causing the alleged injury occurred in Texas when Defendants refused benefits payment to Dr. Strong under the "injuries" provision.  Texas has the most significant interest in the resolution of this manner.  The only relationship that Dr. Strong had with Idaho was that he retired to Idaho in 1998. The Defendants in this case would justifiably expect to be governed by Texas law since they conducted their business in Texas.  Therefore, the Court concludes Texas law governs the effect of the statute of limitations as to the tort claim and also controls when the injury accrued on the bad faith claim.

### 2.  Statute of Limitations

Pursuant to Texas law, an action for bad faith is governed by a two year statute of limitations.  Tex. Ins. Code Ann. art. 21.21 §16(d) (Vernon 2005).  A bad faith tort claim does not accrue until there is a legal injury to the insured. Knott, 128 S.W.3d at 221 (explaining that "a cause of action accrues when a wrongful act causes a legal injury").   Under the somewhat unique facts of this case, Dr. Strong suffered no actionable injury as a result of any bad faith tort until his benefit payments ceased in June of 2002. See Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990) (explaining that "the insured's bad faith 'cause of action accrues the moment an insurer should pay a claim but fails to do so. At that moment, the insurer's wrongful conduct first causes harm to the insured. ").  Dr. Strong's bad faith claim was filed on January 21, 2003 and therefore is not barred by the Texas two-year statute of limitations.[4]

---

[4]        In the alternative, analysis of this issue under Idaho's borrowing statute, Idaho Code § 5-239, would result in a conclusion that the exception clause of that statute

**3.  Genuine Issue of Material Fact Analysis**

**a.  Bad faith analysis under Texas Law**

To demonstrate bad faith under Texas law, the insured must prove: (1) the absence of a reasonable basis for denying or delaying payment of policy benefits; and (2) the insurer knew or should have known there was no reasonable basis for denying or delaying payment.  Darby v. Jefferson Life Insurance Co., 998 S.W.2d 622, 626. (Tex. Ct. App. 1995).

The issue is whether there is evidence to deny the claim not whether the insurer correctly evaluated the evidence.  Id. at 627.  If a reasonable basis exists for questioning the insurance claim, the insurer may deny it and litigate the matter without also facing a bad faith claim.  The standard is whether the insurer had no reasonable basis to delay or deny payment of the claim and whether it knew or should have known it had no reasonable basis for its action.  Id. "Whether there is a reasonable basis for denial is judged by the facts before the insurer at the time the claim was denied." Id.

Under Texas law, Dr. Strong fails to come forward with any evidence to create a genuine issue of material fact on the bad faith elements.  The ophthalmology records of Dr. David Strager and Dr. Marshal Parks, the attending physicians who performed Dr. Strong's eye surgeries, were reviewed.  The letter written by Dr. Olson, who Dr. Strong obtained medical proof in direct conflict with the two treating physicians that performed the surgeries, was reviewed.  The ophthalmology records of Dr. Meltzer were reviewed.  The physician review by Dr. DiStefano was reviewed.  Based upon a

---

applies here and that therefore Dr. Strong's tort claim is not time barred. See Miller v. Stauffer Chem. Co., 581 P.2d 345, 346-47 (Idaho 1978).

through review of the documentation in the file, both in favor of and against Dr. Strong, Defendants determined Dr. Strong's disabling condition had been appropriately classified as a "sickness" as opposed to an "accident."

There was no absence of a reasonable basis to classify Dr. Strong's disabling condition as a "sickness: as opposed to an "accident."   Defendants, with the documentation and evidence before them, had a reasonable basis for denying Dr. Strong's claim under the "injury" provision.   Texas law clearly states that, "the issue is whether there was evidence to deny the claim not whether the insurer correctly evaluated the evidence."   In this case, Defendants had evidence to deny the claim and although the insurance companies determination is different than Dr. Olson's opinion, there is a reasonable basis to deny coverage.

Because the Plaintiff has failed to establish the first element of a bad faith claim under Texas law, summary judgment in favor of Defendants on this claim is appropriate as the mere unhappiness of a claimant with the coverage determination does not give rise to a cause of action for bad faith on the part of the insurance company.   Moreover, Plaintiff has failed to submit evidence on the second element that the insurer knew there was no reasonable basis to deny the claim.

The record indicates Defendants reviewed the claim when it was filed.   The attending physicians records were evaluated to determine whether Dr. Strong was totally disabled and these records support a decision for benefits under the sickness provision.   When Dr. Strong appealed the decision in 2000, the claim was reviewed again.   When Dr. Strong re-appealed in 2001 another medical review was completed.

ORDER - 15

For those reasons, summary judgment should be granted in Defendants favor on this claim under Texas law.

**b. Bad faith analysis under Idaho Law.**

In the alternative, if Idaho law should apply to this claim, the Court finds that summary judgment would be appropriate in that instance also. Under Idaho Law, the elements of bad faith are even stricter.  To demonstrate bad faith under Idaho law, the insured must show:  (1) the insurer intentionally and unreasonably denied payment of the claims; (2) the claim was not fairly debatable; (3) the insurer's denial was not the result of a good faith mistake; and (4) the resulting harm was not fully compensable by contract damages.  <u>Simper v. Farm Bureau Mutual Insurance Company of Idaho</u>, 974 P.2d 1100, 1103 (Idaho 1999).

Likewise under Idaho law, the Court finds the elements to establish bad faith were not met by Dr. Strong in this case.  There is no evidence before the Court that Defendants intentionally or unreasonably denied Dr. Strong his benefits.  As stated above,  Dr. Strong's entire file was reviewed a number of times.  Defendants allowed Dr. Strong to appeal their initial decision that informed Dr. Strong that his disability was a "sickness" and not an "injury."  After another review of Dr. Strong's file and again informing him that they had found his disability to be a "sickness" and not an "injury" they allowed him a re-appeal.  Dr. Strong was given ample opportunity to submit evidence and documentation to show that his disability was in fact an injury and each time Defendants reviewed that information.  However, based upon thorough review of Dr. Strong's file, Defendants determined that an appropriate classification of Dr. Strong's disability as a result of a "sickness" had been made.

ORDER - 16

Dr. Strong fails to submit any evidence to create a genuine issue of material fact on the second element of the bad faith claim.  Dr. Strong's claim that his disability  was not due to strabismus but rather to an accident or injury is clearly debatable.  The medical records of Dr. Strong's treating physicians support Defendant's decision that the disability was caused by a sickness.  Dr. Strong obtained a medical opinion through Dr. Olson that his condition was caused by an accident or injury suffered from the surgeries performed to correct his strabismus.  This claim was fairly debatable and both sides were adequately presented and timely considered by the insurance company.

Therefore, the bad faith claim will be dismissed as a matter of law on the motion for summary judgment as the Court finds no material issues of genuine fact exists on this claim under either Texas or Idaho standards.

**C. Motion to Amend to Allege Punitive Damages**

Dr. Strong has moved for leave to amend his Complaint to allege a claim for punitive damages. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." But in this diversity action there is the additional consideration involving the application of state law. The question of whether to permit a claim for punitive damages is substantive in nature and accordingly is controlled by relevant Idaho case law. See, e.g., Doe v. Cutter Biological, 844 F. Supp. 602, 610 (D. Idaho 1994).

Under Idaho Code § 6-1604(2), a plaintiff cannot make a claim for punitive damages in the original complaint; instead the claim must be made by a pretrial motion to amend.  The Idaho statute directs a court to grant such a motion if "the court concludes that, the moving party has established at [a] hearing a reasonable likelihood

of proving facts at trial sufficient to support an award of punitive damages."[5]  I.C. § 6-1604(2). Relevant here, "an award of punitive damages [is] permissible only where the claimant had proven 'by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious, or outrageous conduct.'" Kuntz v. Lamar Corp., 385 F.3d 1177, 1187 (9th Cir. 2004) (quoting applicable version of Idaho Code § 6-1604(1)). Punitive damages are not favored by Idaho law and will be awarded in only the most unusual and compelling circumstances. Manning v. Twin Falls Clinic & Hosp., 830 P.2d 1185, 1190 (1992). The "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence'; 'malice, oppression, wantonness';  or simply 'deliberate or willful.'" Id. Taken together, for Dr. Strong to succeed on his motion he must show a reasonable likelihood that he could prove by a preponderance of the evidence "that the defendant[s] acted in a manner that was an extreme deviation from reasonable standards of conduct, that the act was performed with an understanding of or disregard for its likely consequences, and that the defendant[s] acted with an extremely harmful state of mind." Kuntz., 385 F.3d at 1187; see also Vendelin v. Costco Wholesale Corp., 95 P.3d 34, 41-42 (Idaho 2004).

---

[5]        The provision in the Idaho statute for a "hearing" has been interpreted as referring to oral argument.  See Doe v. Cutter Biological, 844 F. Supp. 602, 604, 610 (D. Idaho 1994) (granting motion to amend complaint to allow claim of punitive damages after reviewing record evidence and hearing oral argument). Here, the parties have not formally moved for oral argument and because the Court finds that the facts and legal arguments are adequately presented in the briefs and record, it concludes that the decisional process would not be significantly aided by a hearing.

ORDER - 18

For many of the same reasons that the Court granted summary judgment on the Dr. Strong's bad faith claim the Court finds that Dr. Strong has failed to make the requisite showing to allege a claim for punitive damages.[6]  There is no competent evidence in the record that indicates Defendants engaged in an extreme deviation from reasonable standards and acted with a harmful state of mind when denying Dr. Strong's request to re-characterized his total disability as an injury or accident rather than a sickness.

In an effort to demonstrate that Defendants' claim review was unreasonable, Dr. Strong makes much of the fact that Defendants did not initiate an immediate review of his claim following his phone message of September 18, 1998. But as Defendants point out, in the same message Dr. Strong indicated he would be submitting documentation in support of his request. It was not unreasonable, then, for Defendants to wait for the submission of the promised documentation prior to review of the claim.[7]

Dr. Strong also relies on the expert opinion of Stephen D. Prater to show the inadequateness of the Defendants' review process. In the very limited reference to the actual facts of this case, Mr. Prater opines that Defendants' claims review was unreasonable because the reviewer did not consult with legal or medical experts and/or

---

[6]      That is not to say that the punitive damages claim is denied simply because the bad faith claim will be dismissed. Under Idaho law, a Plaintiff can still go forward with punitive damages even if after losing on a bad faith claim. <u>Myers v. Workmen's Auto Ins. Co.</u>, 95 P.3d 977, 985 (Idaho 2004). But in this case, Plaintiff has not made the necessary showing required by either claim.

[7]      Similarly, Dr. Strong initially alleged it was significant that his claim was assigned to the "Accident Department" but was deemed a "sickness." But as Defendants note, the "Accident Department" is the alternative to the "Life Department" which processes life insurance claims.

ORDER - 19

did not reference the proper legal standards. In the same vein, Dr. Strong maintains that Defendants applied an "unintended means tests" and failed to contact or consult with outside, independent sources when making its claim determination.      There is no requirement, however, that an insurance company collect all possible medical opinions or consult with legal experts to make a claim review reasonable. See, e.g., Cardiner v. Provident Life & Accident Ins. Co., 158 F. Supp.2d 1088, 1104-05 (C.D. Cal. 2001). Instead, the claim review must timely consider the relevant medical evidence and reach a decision that is adequately supported by that evidence and consistent with the terms of the insurance contract. Id.  As explained in the Court's assessment of Dr. Strong's bad faith cause of action, Defendants did that here. Indeed the cause of Dr. Strong's disability is reasonably disputed and there is substantial medical evidence that supports a conclusion that Dr. Strong suffers from a sickness. Accordingly, Dr. Strong has not established a reasonable likelihood of proving by a preponderance of the evidence the requisite "extremely harmful state of mind" and "extreme deviation from reasonable standards" to go forward on a claim for punitive damages. Kuntz., 385 F.3d at 1187.  Dr Strong's motion to amend will be denied.

**D. Unum and UnumProvident's Motion**

In summary, the Court will not allow Dr. Strong  to allege a claim for punitive damages and will dismiss Dr. Strong's bad faith claim, but denies summary judgment on Dr. Strong's breach of contract claim. Because Dr. Strong's breach of contract claim will proceed to trial, the Court must now address the Motion for Summary Judgment filed by Unum and UnumProvident. Those two Defendants have asked the Court to dismiss them from the breach of contract claim because, unlike Provident, they were

ORDER - 20

not signatories to the insurance contracts. In response, Dr. Strong argues that Unum and UnumProvident , together with Provident, were members of a joint venture and therefore all Defendants may be held liable for breach of contract. As evidence of their membership in the joint venture, Dr. Strong points to Unum and UnumProvident's involvement in the denial of Dr. Strong's claims for insurance benefits.  While not denying their involvement in the claims process, Unum and UnumProvident contend that the inference that should be drawn from this involvement is that the Defendants engaged in a "principal/agent relationship or employer/employee relationship" and not a joint venture. (Defs.' Reply in Supp of Their Mot. for Summ. J. at 6).

Under Texas law, which the Court has determined applies to the contract claim, "[i]f a joint venture exists . . . one joint venturer has the authority to bind other joint venturers by contracts made in furtherance of the joint enterprise." Misco-United Supply, Inc., v. Petroleum Corp., 462 F.2d 75, 79 (5th Cir. 1972) (applying Texas law). Accordingly, if a joint venture is established, Unum and UnumProvident could be held liable, the same as Provident, for any breach of contract. Significant to Unum and UnumProvident's current motion, the joint venture determination is deemed a "question of a fact, to be resolved by the jury" where, as here, "opposing inferences" can be drawn from the evidence "as to the intentions of the parties regarding the creation of a joint venture." Id. at 80. Therefore, at this time the Court cannot dismiss Unum and UnumProvident from the lawsuit because the evidence permits the inference that the Defendants participated in a joint venture with respect to the processing of the insurance contracts at issue in this case.

ORDER - 21

**E. Other Pending Motions**

The parties have filed numerous motions to strike and/or to supplement the record. The Court has reviewed all the disputed items and none of these materials make any substantive difference to the outcome described above. Therefore, to avoid any further delay and to facilitate the timely issuance of this decision so the parties may have adequate notice of the Court's position prior to trial, and the associated pre-trial filing deadlines, the Court will make all of the contested materials part of the record.


**ORDER**

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that

1. The referral of non-dispositive pretrial matters to the United States Magistrate Judge is **WITHDRAWN**;

2. Defendants' Motion to Strike (docket no. 46) is **DENIED**;

3. Defendants' Motion to Supplement Record (docket no. 67) is **GRANTED**;

4. Defendants' Motion to Strike (docket no. 71) is **DENIED**;

5. Plaintiff's Motion to Supplement (docket no. 72) is **GRANTED**;

6. Plaintiff's Motion for Leave to File an Amended Complaint to Add a Claim for Punitive Damages (docket no. 26) is **DENIED**;

7. Plaintiff's Motion for Partial Summary Judgment (docket no. 18) is **DENIED**;

8. Defendants UnumProvident and Unum's Motion for Summary Judgment (docket no. 16) is **DENIED**; and

9. Defendants' Motion for Summary Judgment (docket no. 15) is **GRANTED in part and DENIED in part** as follows: summary judgment is granted on Plaintiff's bad faith claim and it is dismissed, and summary judgment is denied on Plaintiff's breach of contract claim and it will proceed to trial as scheduled.

DATED:  **May 13, 2005**

Honorable Edward J. Lodge
U. S. District Judge

ORDER - 23